UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JEFFREY H. AMMONS and
LISA M. AMMONS,
    Debtors.                                                               No. 7-08-11290 SR

JEFFREY H. AMMONS and
LISA M. AMMONS,
    Plaintiffs,
v.                                                                        Adv. No. 11-1082 S

EDDY FEDERAL CREDIT UNION,
    Defendant.

**MEMORANDUM OPINION ON PLAINTIFFS'**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on Jeffrey H. Ammons' and Lisa M. Ammons' ("Plaintiffs'") Motion for Summary Judgment (doc 17). Plaintiffs appear through their attorney Sanders, Bruin, Coll & Worley, P.A. (Clark C. Coll). Eddy Federal Credit Union ("Defendant") appears through its attorney Rodey, Dickason, Sloan, Akin & Robb, P.A. (Theresa W. Parrish and Charles R. Hughson).[1] This adversary proceeding was brought seeking an order of civil contempt, injunctive relief, and damages for alleged violations of the discharge injunction. The facts are generally not in dispute. For the reasons set forth below, the Court finds that the motion is well taken in part and will be

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and/or (O); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

granted in part and denied in part.  The Court will enter a partial summary judgment for Plaintiffs.

**SUMMARY JUDGMENT**

In adversary proceedings Summary Judgment is governed by Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56, which in turn provides, in relevant part:

> **Rule 56. Summary Judgment**
> **(a) Motion for Summary Judgment or Partial Summary Judgment.**  A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.
> **(b) ...**
> **(c) Procedures.**
> (1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3) Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be

> made on personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or
> declarant is competent to testify on the matters
> stated.
> **(d) ...**
> **(e) Failing to Properly Support or Address a Fact.** If
> a party fails to properly support an assertion of fact
> or fails to properly address another party's assertion
> of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address
> the fact;
> (2) consider the fact undisputed for purposes of the
> motion;
> (3) grant summary judgment if the motion and supporting
> materials--including the facts considered
> undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.
> **(f) ...**
> **(g) Failing to Grant All the Requested Relief.** If the
> court does not grant all the relief requested by the
> motion, it may enter an order stating any material
> fact--including an item of damages or other
> relief--that is not genuinely in dispute and treating
> the fact as established in the case.

Fed.R.Civ.P. 56.[2] Additionally, New Mexico Local Rule 7056-1 regulates the required procedure:

> **SUMMARY JUDGMENT**
>
> **(a) Memoranda.** The movant shall file with the motion
> a memorandum containing a concise statement in support
> of the motion with a list of authorities. A motion for
> summary judgment filed without a memorandum may be
> summarily denied. A party opposing the motion shall,
> within 21 days after service of the motion, file a
> memorandum containing a concise statement in opposition
> to the motion with a list of authorities. If no
> response is filed, the court may grant the motion. The
> movant may, within 14 days after the service of a
> response, file a reply memorandum.

---

[2]The version of Rule 56 quoted became effective on December 1, 2010. See Fed. R. Civ. P. 56 (2010 Advisory Committee comments). Material formerly contained in former Rule 56(c) now appears in rule 56(a).

Page -3-

> **(b) Undisputed Facts.** The memorandum in support of the motion shall set out as its opening a concise statement of all of the material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.
>
> **(c) Disputed Facts.** A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in movant's statement that are properly supported shall be deemed admitted unless specifically controverted.

NM LBR 7056-1.

The United States District Court for the District of New Mexico recently presented a complete overview of the legal standards for deciding Motions for Summary Judgment in the Tenth Circuit:

> Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact .") (internal quotation marks omitted). Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing

that there is a genuine issue for trial.  See Celotex
Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v.
Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)
("However, the nonmoving party may not rest on its
pleadings but must set forth specific facts showing
that there is a genuine issue for trial as to those
dispositive matters for which it carries the burden of
proof.")(internal quotation marks omitted).

    The party opposing a motion for summary judgment
must "set forth specific facts showing that there is a
genuine issue for trial as to those dispositive matters
for which it carries the burden of proof."  Applied
Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,
912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides
that "an opposing party may not rely merely on
allegations or denials in its own pleading; rather, its
response must—by affidavits or as otherwise provided in
this rule—set out specific facts showing a genuine
issue for trial."  Fed.R.Civ.P. 56(e)(2).  It is not
enough for the party opposing a properly supported
motion for summary judgment to "rest on mere
allegations or denials of his [or her] pleadings."
Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See
Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231
(10th Cir. 1990); Otteson v. United States, 622 F.2d
516, 519 (10th Cir. 1980)( "However, 'once a properly
supported summary judgment motion is made, the opposing
party may not rest on the allegations contained in his
complaint, but must respond with specific facts showing
the existence of a genuine factual issue to be tried.'"
(citation omitted)).  Nor can a party "avoid summary
judgment by repeating conclusory opinions, allegations
unsupported by specific facts, or speculation."  Colony
Nat'l Ins. Co. v. Omer, No. 07–2123, 2008 WL 2309005,
at *1 (D. Kan. June 2, 2008)(citing Fed.R.Civ.P. 56(e)
and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452
F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a
motion for summary judgment, 'a party cannot rest on
ignorance of facts, on speculation, or on suspicion and
may not escape summary judgment in the mere hope that
something will turn up at trial.'"  Colony Nat'l Ins.
Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v.
Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

    To survive summary judgment, genuine factual
issues must exist that "can be resolved only by a
finder of fact because they may reasonably be resolved
in favor of either party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. at 250. A mere "scintilla" of evidence
will not avoid summary judgment. Vitkus v. Beatrice
Co., 11 F.3d at 1539. Rather, there must be sufficient
evidence on which the fact-finder could reasonably find
for the nonmoving party. See Anderson v. Liberty
Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill &
Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448
(1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.
"[T]here is no evidence for trial unless there is
sufficient evidence favoring the nonmoving party for a
jury to return a verdict for that party. If the
evidence is merely colorable ... or is not
significantly probative, ... summary judgment may be
granted ." Anderson v. Liberty Lobby, Inc., 477 U.S.
at 249 (internal citations omitted). Where a rational
trier of fact, considering the record as a whole, could
not find for the non-moving party, there is no genuine
issue for trial. See Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 587 (1986).
>   When reviewing a motion for summary judgment, the
court should keep in mind three principles. First, the
court's role is not to weigh the evidence, but to
assess the threshold issue whether a genuine issue
exists as to material facts requiring a trial. See
Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.
Second, the court must resolve all reasonable
inferences and doubts in favor of the non-moving party
and construe all evidence in the light most favorable
to the non-moving party. See Hunt v. Cromartie, 526
U.S. 541, 550-55 (1999). Third, the court cannot
decide any issues of credibility. See Anderson v.
Liberty Lobby, Inc., 477 U.S. at 255.

Bhandari v. VHA Southwest Community Health Corp., 2011 WL 1336525

at *10-11 (D. N.M. 2011) (citing former Rule 56).

**UNDISPUTED FACTS**[3]

---

[3]In Plaintiffs' Motion, counsel did not cite to the record
to establish facts. Usually, this Court simply denies summary
judgment motions that lack citations to the record. Without a
citation to the record, there is no fact before the Court that
the non-movant needs to dispute. However, the proposed
undisputed facts in this case are essentially a copy of the facts
in the complaint and all were admitted. The Court will overlook
(continued...)

Defendant agreed that the following facts in Plaintiff's Statement of Undisputed Facts were, in fact, undisputed:

4. On April 24, 2008, Plaintiffs filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

5. Eddy Federal was listed as a creditor of the bankruptcy estate in Plaintiffs Voluntary Petition.

6. On August 26, 2008, this Court entered its Discharge Order.

7. The month following the entry of the Discharge Order, on September 25, 2008, Plaintiffs signed a Loanliner Open-End Credit Plan with Eddy Federal, which purported to advance "new money" and additionally agreed to pay the previous balance owed to Eddy Federal.

8. On August 5, 2009, Plaintiffs executed an Open End Plan Agreement to pay all indebtedness owed to Eddy Federal on any account or subaccount.

9. On March 2, 2010, Lisa Ammons signed a Loan Modification Agreement to the loan of September 25, 2008, which extended the time for payment and agreed to repay the "entire unpaid balance" of $16,034.45 by paying $394.70 every month.

10. The Note that Eddy Federal sued on was titled Open-End Voucher and Security Agreement. That Note was "secured by

---

[3](...continued)
the lapse in this motion. Defendant's Additional Facts mostly cited to exhibits that would have been admissible at trial.

[Plaintiffs'] shares, all property securing other plan advances and loans received in the past or in the future" in addition to a 2000 Ford Explorer.

11. The Note secured a previous balance of $11,331.47, which was discharged in bankruptcy, in addition to a new advance of $6,149.00.

12. At no point did Eddy Federal file this Note, which purported to reaffirm previously discharged debt, with this Court.

13. This Note had none of the disclosures required for reaffirmation agreements by Section 524 of the Bankruptcy Code.

14. Eddy Federal obtained a Default Judgment on December 8, 2010, awarding it the payoff balance on the Note plus interest, fees, costs, and attorney's fees in addition to an unpaid sum of credit card debt with interest, fees, costs, and attorney's fees.

15. Eddy Federal thereafter began its garnishment efforts.

16. By letter dated March 22, 2011, counsel for Plaintiffs contacted counsel for Defendant Eddy Federal and notified counsel of the violation of the discharge injunction, specifically outlining the violation of 524(c) of the Code. Plaintiffs' counsel requested that Defendant Eddy Federal cease garnishment efforts and return amounts already collected and/ or garnished.

17. Plaintiffs thereafter instituted this adversary proceeding after Defendant Eddy Federal failed to remedy its violation of the discharge injunction as requested by Plaintiffs' counsel.

Plaintiffs agreed that the following facts in Defendant's Statement of Undisputed Facts were, in fact, undisputed:

2. Following the filing of the petition referenced in paragraph 4 of Plaintiffs' statement of undisputed material facts, Plaintiffs continued to use their credit card account with Defendant to make new purchases or to obtain cash advances, all as detailed in the credit card statements (which were attached as Exhibit A for 2008, Exhibit B for 2009 and Exhibit C for 2010.) The purchases, among other things, included the charging in the spring of 2009 of approximately $2,500 in connection with a trip to Disneyland in Anaheim, California. Plaintiffs ceased using the credit card when they reached their credit limit of $8,500, as shown by the 2010 statements (in Exhibit C.)

3. Defendant filed its Complaint to collect the new money due on the promissory note and credit card account in state court (the "state court Lawsuit") on October 29, 2010. (Attached as Exhibit E.)

4. Defendant obtained its Default Judgment against Plaintiffs on December 8, 2010. (Attached as Exhibit F.)

5. Defendant collected $1,176.98 in garnished funds between March 8, 2011 and May 16, 2011, according to the recap (attached as Exhibit D.)

6. Defendant filed its Release of Garnishment against Plaintiffs on June 20, 2011. (Attached as Exhibit G.)

7.  Defendant was represented by counsel in Carlsbad throughout the state court proceedings.

8.  Plaintiffs filed their Complaint for Civil Contempt, Injunctive Relief and Damages for Violation of Discharge Injunction on May 13, 2011, and mailed a copy of it on May 23, 2011 to Defendant and its Carlsbad counsel (Docs. 1, 2 and 3).

9.  Defendant filed its Answer and Counterclaim on July 8, 2011 (Doc. 8), seeking a Declaratory Judgment regarding the advances of new money to the Plaintiffs, asserting affirmative defenses regarding Plaintiffs' lack of good faith, their voluntary repayment of otherwise discharged debts and issues regarding the new money generally, and seeking a declaration that the referenced amounts in Defendant's counterclaim were not discharged and could properly be collected and assigned to the payment of the new post-discharge credit card debt.

10. Plaintiff Lisa Ammons is a former employee of the Defendant's.

**DISCUSSION**

Bankruptcy Code section 524, Effect of discharge, provides in part:

> (a) A discharge in a case under this title--
>     (1) voids any judgment at any time obtained, to
>     the extent that such judgment is a determination
>     of the personal liability of the debtor with
>     respect to any debt discharged under section 727,
>     944, 1141, 1228, or 1328 of this title, whether or
>     not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.
(b) ...
(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if--
    (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
    (2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;
    (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--
        (A) such agreement represents a fully informed and voluntary agreement by the debtor;
        (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

```
            (C) the attorney fully advised the debtor of
            the legal effect and consequences of--
                (I) an agreement of the kind specified
                in this subsection; and
                (ii) any default under such an
                agreement;
        (4) the debtor has not rescinded such agreement at
        any time prior to discharge or within sixty days
        after such agreement is filed with the court,
        whichever occurs later, by giving notice of
        rescission to the holder of such claim;
        (5) the provisions of subsection (d) of this
        section have been complied with; and
        (6) ...
    (d) ...
    (e) ...
    (f) Nothing contained in subsection (c) or (d) of this
    section prevents a debtor from voluntarily repaying any
    debt.
```

Section 524(a)(2) is referred to as the "discharge injunction." In re Martin, 2012 WL 907090 at *4 (6th Cir. BAP 2012). "A creditor violates the discharge injunction (or automatic stay) when it (1) has notice of the debtor's discharge (or, in the case of the automatic stay, has notice of the bankruptcy filing); (2) intended the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (1st Cir. BAP 2009)(Citations omitted.) Courts use an objective test to determine whether a creditor's actions were improperly coercive under the circumstances. Id. (Citations omitted.) An action is coercive where it is tantamount to a threat or it places a debtor "between a rock and hard place". Id. at 7 (Citations omitted.)

The Bankruptcy Code specifically provides for remedies for an intentional violation of the automatic stay provisions of section 362. See 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.") Unlike section 362, however, section 524 does not set forth a remedy for violations of the discharge injunction.

> However, because
>> [s]ection 524(a)(2) not only prohibits but also enjoins [law]suits, as well as other collection actions, ... the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge.
>
> Cox v. Zale Del., Inc., 239 F.3d 910, 915 (7th Cir. 2001) (citing Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 421 (6th Cir. 2000) (recognizing that no private right of action exists for violations of § 524(a), but that "the traditional remedy for violation of [the discharge] injunction lies in contempt proceedings....")). Pursuant to 11 U.S.C. § 105(a), a bankruptcy court has the power to issue civil contempt orders when a creditor has violated one of Bankruptcy Code's substantive provisions. McClatchey v. Parsons (In re Lazy Acres Farm, Inc.), 134 F.3d 371 (6th Cir. 1997) (unpublished table decision). The purpose of civil contempt is "to compel or coerce obedience to a court order or to compensate a party for another's noncompliance with a court order." In re Moohaven Dairy LLC, 461 B.R. 22, 27 (Bankr. E.D. Mich. 2011).
>     A court may remedy a violation of § 524(a)(2) by awarding damages to the injured debtor pursuant to 11 U.S.C. § 105(a). Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1306 (10th Cir. 2008); Gunter [v. O'Brien & Assocs. Co., LPA (In re Gunter)], 389 B.R. [67] at 72 [(Bankr. S.D. Ohio 2008)]. In order to recover damages, a debtor must suffer an actual injury. Id. (concluding that bankruptcy court "cannot award damages

for violations of the discharge injunction that are technical or inadvertent and do not rise to the level of contempt.") A debtor must prove his injury by a preponderance of the evidence. McCool v. Beneficial (In re McCool), 446 B.R. 819, 823–24 (Bankr. N.D. Ohio 2010). "[A] debtor cannot rely on 'undue conjecture' or speculation, but instead must support its claim of actual injury with 'adequate proof.'" McCool, 446 B.R. at 824 (citing Archer v. Macomb Cnty. Bank, 853 F.2d 497, 499-500 (6th Cir. 1988)). In addition to an award of actual damages, a debtor may also be entitled to an award of attorney fees "where necessary to effectuate the purposes of the discharge injunction...." Miles v. Clarke (In re Miles), 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006).

Martin, 2012 WL 907090 at *5.

Under Tenth Circuit law, the bankruptcy courts look at the alleged violation's substance, not only its form. Paul, 534 F.3d at 1308.

> Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves "the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly," i.e., so as to obtain payment of the discharged debt. Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006); see In re Schlichtmann, 375 B.R. 41, 95–97 (Bankr. D. Mass. 2007) (applying Pratt with extensive discussion); see also In re Jones, 367 B.R. 564, 570 & n. 3 (Bankr. E.D. Va. 2007); 3 Norton Bankruptcy Law & Practice 3d § 58:5, at 58-24 & n. 13 (noting that discharge injunction precludes otherwise permissible actions against third parties if "designed to collect the debt from the discharged debtor"). The inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required. In re Pratt, 462 F.3d at 19; In re Schlichtmann, 375 B.R. at 95. By the same token, the presence of some other procedural impropriety or error in connection with the creditor's action will not give rise to a violation of the discharge injunction if the

>       objective effect is not to coerce payment of a
>       discharged debt:
>>           [T]he discharge prohibits prepetition creditors
>>           only from collecting their prepetition debts. It
>>           is not [a] lifelong shield against other
>>           acts—including ... assertions of claims, and
>>           litigation—by those same creditors, even where
>>           these other acts are undertaken wrongfully and in
>>           bad faith.  <u>If an act is not in fact one to
>>           collect or enforce a prepetition debt, then
>>           whatever its faults, it is not a violation of the
>>           discharge, even though undertaken by the holder of
>>           a discharged debt.</u>
>       <u>In re Schlichtmann</u>, 375 B.R. at 97 (emphasis added).
>       Accordingly, a debtor may establish that a creditor who
>       has taken an action not overtly prohibited by §
>       524(a)(2) nevertheless violated the discharge
>       injunction, but to do so the debtor must "prove not
>       merely that [the creditor's] act is not what it appears
>       to be, but that the act in question is one to collect a
>       discharged debt <u>in personam</u>."  <u>Id.</u>
>
> <u>Id.</u> (Footnote omitted.)

The discharge injunction obviously does not apply to debts that arise post-petition.  <u>Id.</u> at 1306 and n.4.  Nor does it apply to non-dischargeable debts.  11 U.S.C. § 542(a) (Section applies to "any debt <u>discharged</u> under section 727, 944, 1141, 1228, or 1328 of this title.")(Emphasis added.)  And, the discharge injunction does not apply to reaffirmed debts.  11 U.S.C. § 524(c).

**<u>ANALYSIS</u>**

Case 11-01082-s    Doc 23    Filed 04/13/12    Entered 04/13/12 14:31:31 Page 15 of 20

From Defendant's perspective, Plaintiffs debt to Defendant consisted of both pre- and post-petition debts. However, the pre-petition debt was discharged in Plaintiffs' bankruptcy case[4].

Plaintiffs have established a prima facie case for violation of the discharge injunction. First, Defendant had notice of the debtor's discharge. Defendant was listed as a creditor.

Second, Defendant intended to include the discharged debt in the opening balance of the September 25, 2008 note. Defendant intended to collect the total debt (both pre- and post-petition) when it obtained its default judgment against the Plaintiffs. So, whether the actual violation was inclusion of the discharged debt in the new note or the subsequent collection action, the act was intentional.

Third, Defendant's actions improperly coerced or harassed the Plaintiffs into paying a discharged debt. A garnishment is a court order to a third party who is indebted to the debtor to turn over to the creditor any of the debtor's property (such as wages or bank accounts) held by that third party. Blacks Law Dictionary (9th ed. 2009). This is coercion. It is not a voluntary payment.

---

[4] The Court has taken judicial notice of the docket in the main bankruptcy case and finds that no adversary proceedings were filed before the entry of discharge on August 26, 2008. Nor were any reaffirmation agreements filed.

Page -16-

Therefore, the Court can find and declare that there was a violation of the discharge injunction. The Court will enter a partial summary judgment to that extent[5]. What the Court cannot do, however, is determine the amount of damages, punitive damages, costs or attorney's fees which may be due. The Court will schedule an evidentiary hearing on those issues.

At trial, the burden is squarely on Plaintiffs to prove their actual damages. As an aside, this may be difficult. For example, to the extent Plaintiffs claim attorney fees in defending the state court collection action, the Court questions the necessity or benefit considering that a default judgment was entered for the amount requested.

Plaintiffs will also need to establish their right to punitive damages. On this issue, the Court has many questions.

---

[5]The Court has considered Defendant's affirmative defense in reaching this decision. Affirmative defense 1 questions whether the Plaintiffs' own actions should defeat their entitlement to damages. This is unrelated to the question of whether the Defendant knowingly violated a court order. The Court finds that affirmative defense 2, voluntary payment, also is unrelated to the violation of the discharge order that resulted in a garnishment. Voluntary payment may be a defense, however, to the amount of damages, to the issue of the interim payments on the loans and credit cards, or to assessment of punitive damages. Affirmative defense 3 also goes to damages, not to whether the discharge injunction was violated. Affirmative defense 4 (the right to collect the debt arising from the "new money") is a correct statement of the law, but irrelevant to whether Defendant violated the discharge injunction as to the discharged debt. Finally, affirmative defense 5 seeks to offset any amounts awarded to Plaintiffs against the amounts Plaintiffs borrowed post-petition. This defense is premature because it is possible that Plaintiffs will not receive any award.

Case 11-01082-s    Doc 23    Filed 04/13/12    Entered 04/13/12 14:31:31 Page 17 of 20

For example, 1) how did the discharged debt appear as the opening balance on the new credit application -- was this at the Debtor's request or at the Credit Union's insistence?  2) was Debtor threatened with revocation of the credit union membership and, if so, what were the ramifications of that?  3) Debtor was an employee of the credit union, how did that influence the agreement to repay the discharged debt?  4) to what degree was Debtor cooperating with the credit union in attempting to re-establish liability on the debt?  5) how desperate was Debtor in approaching the credit union one month after discharge and asking to borrow $6,149 more, and how aware was the credit union of Debtor's financial need?  6) did Debtor have another source of funds that would have enabled a $6,000 loan elsewhere without adding over $11,000 as an upfront charge?  The Court has reviewed numerous cases from other jurisdictions and finds that the assessment of punitive damages is a very fact intensive decision. <u>Compare, e.g.</u>, <u>In re Arnold</u>, 206 B.R. 560 (Bankr. N.D. Ala. 1997) (The bankruptcy court found that a credit union was in willful and malicious violation of the discharge injunction.  The credit union revoked the debtor's membership when he discharged a debt owed to it.  He later was in desperate need of money to allow his wife to finish her education and the credit union agreed to reinstate him as a member and extend new credit if he added the discharged loan balance to the new credit.  The Court awarded

actual damages (all repayments plus interest) and $15,000 of punitive damages.) with <u>Lindale Nat'l Bank f. Artzt (In re Artzt)</u>, 145 B.R. 866, 867 and 870 (Bankr. E.D. Tex. 1992) (The Court refused to award any attorney fees to debtors for prosecuting a violation of the discharge injunction because of their participation with the bank in the "attempts by both parties to manipulate the bankruptcy process" by attempting to avoid the requirements of a reaffirmation agreement.).

**CONCLUSION**

The Court will enter a separate Order in conformity with the above, granting Plaintiff's Motion for Summary Judgment in part (liability) and denying it in part (damages). The Court finds that Defendant is in civil contempt for violating the discharge injunction of 11 U.S.C. § 524(a)(2) by attempting to collect a discharged debt. The Court also finds Defendant liable to the Plaintiffs for remedial and compensatory damages, punitive damages if appropriate, costs and attorney's fees if appropriate, all in amounts to be determined at trial. The Court also finds that the request for injunctive relief is now moot as the garnishment has been withdrawn (at least for now).

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: April 13, 2012

Page -19-

Case 11-01082-s    Doc 23    Filed 04/13/12    Entered 04/13/12 14:31:31 Page 19 of 20

Copies to:

Clarke C Coll
PO Box 550
Roswell, NM 88202-0550

Charles R. Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888

Theresa W Parrish
Rodey, Dickason, Sloan, Akin & Robb, PA
PO Box 1888
Albuquerque, NM 87103-1888